UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| LISA CARRELL, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:24-CV-00080 |
| | ) | Judge Waverly D. Crenshaw, Jr. |
| BUC-EE'S TENNESSEE, LLC AND | ) | Magistrate Judge Luke A. Evans |
| BUC-EE'S, LTD., | ) | JURY DEMAND |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS'
STATEMENT OF UNDISPUTED MATERIAL FACTS IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the of the Federal Rules of Civil Procedure and Rule 56.01 of the

Local Rules of Court, Plaintiff submits this Response to Defendants' Statement of Undisputed

Material Facts in Support of Motion for Summary Judgment.

1. On December 2, 2023, Plaintiff Lisa Carrell ("Plaintiff") visited the Buc-ee's store located

at 2045 Genesis Road, Crossville, Tennessee, at approximately 5:30 p.m. Am. Compl. at ¶ 14;

Carrell Dep. at 73:15–19; 75:5–8.

RESPONSE: Undisputed.


2. During her visit on December 2, 2023, Plaintiff and her granddaughter entered into Buc-

ee's by walking through the crosswalk, went to the bathroom, and made a purchase. Carrell Dep.

at 75:21–77:2.

RESPONSE: Undisputed.

3. Upon exiting Buc-ee's, Plaintiff did not use the crosswalk. Plaintiff walked through a

handicap parking spot and tripped and fell over a wheel stop. Carrell Dep. at 75:21–77:2.

RESPONSE: Disputed. Carrell dep., 153:24-154:6. Ms. Carrell testified, "I was also walking in the blue hatched area. I just drifted when I was, I was looking forward for my car and I just drifted a little bit towards my car at the gas pump and that's how my foot caught the end of the tire stop."

4. Plaintiff suffered a hand injury and is seeking $39,313.57 in economic damages ($38,181.42 in past medical expenses and $1,132.15 in past lost wages). Carrell Dep. at 120:16–124:13.

RESPONSE: Undisputed for the purposes of summary judgment.

5. Plaintiff is not seeking any future economic damages. Carrell Dep. at 124:6–13.

RESPONSE: Undisputed for the purposes of summary judgment.

6. Buc-ee's wheel stops, including the one Plaintiff tripped over, are similar to every other wheel stop Plaintiff has seen or encountered. Carrell Dep. at 100:7–14.

RESPONSE: Undisputed for the purposes of summary judgment.

7. Wheel stops, including the one Plaintiff tripped over, prevent cars from encroaching on the ADA walkway and from crashing into the store. Carrell Dep. at 144:1–4; 162:15–19.

RESPONSE: Undisputed.

8. Buc-ee's should do everything it can to prevent cars from crashing into its store front. Carrell Dep. at 144:1–4.

RESPONSE: Disputed. Stammer Declaration, ¶¶ 8, 9,10, 11, 12, 17, 18. Defendants had actual knowledge of the hazard the wheel stops presented, were not required by any regulation or ordinance to use wheel stops to prevent cars from crashing into its store front,

2

and removing the wheel stops and relying solely on bollards was a feasible and lawful alternative.

9. Buc-ee's should do everything it can to prevent cars from encroaching into the ADA walkway. Carrell Dep. at 162:15–19.

RESPONSE: Disputed. Stammer Declaration, ¶¶ 6, 7, 8, 9, 10, 11, 12, 17, 18, 22. Defendants had actual knowledge of the hazard the wheel stops presented, were not required by any regulation or ordinance to use wheel stops to prevent cars from encroaching into the ADA walkway, and removing the wheel stops and relying solely on bollards was a feasible and lawful alternative.

10. Plaintiff has seen many wheel stops in her lifetime. Carrell Dep. at 54:22–55:14; 100:7–14.

RESPONSE: Undisputed.

11. Even though she has encountered wheel stops her whole life, at 63 years old, the wheel stop at Defendants' store is the first one she tripped over. Carrell Dep. at 54:22–55:14; 100:7–14.

RESPONSE: Undisputed.

12. Plaintiff visited the Buc-ee's location less than twelve hours before she fell and stayed for about an hour. Carrell Dep. at 66:23–67:7; 72:4–6.

RESPONSE: Undisputed.

13. During her earlier visit, Plaintiff saw the handicap parking spaces and walked to and from the store in the parking lot without tripping and falling over a wheel stop. Carrell Dep. at 71:2–9.

3

RESPONSE: Undisputed.

14. When Plaintiff visited Buc-ee's later that evening, she again successfully walked into Defendants' store using the crosswalk, not walking through any of the handicap parking spots. Carrell Dep. at 75:21–77:2; 79:17–80:3.

RESPONSE: Undisputed.

15. Plaintiff's granddaughter accompanied Plaintiff into and out of Defendants' store during the evening trip to Buc-ee's when Plaintiff fell. Carrell Dep. at 79:17–80:3; 86:8–88:5.

RESPONSE: Undisputed.

16. Plaintiff's granddaughter used the crosswalk to exit Defendants' store. Carrell Dep. at 86:8–88:5.

RESPONSE: Undisputed.

17. On Plaintiff's exit from Defendants' store, instead of utilizing the crosswalk as granddaughter did, Plaintiff walked into the handicap parking space. Carrell Dep. at 86:8–88:5.

RESPONSE: Disputed. Carrell dep. 153:24-154:6. Ms. Carrell testified, "I was also walking in the blue hatched area. I just drifted when I was, I was looking forward for my car and I just drifted a little bit towards my car at the gas pump and that's how my foot caught the end of the tire stop."

18. Plaintiff tripped over the wheel stop when she walked into the handicap parking space. Carrell Dep. at 86:8–88:5.

RESPONSE: Undisputed.

4

19. Nothing prevented Plaintiff from walking in the crosswalk when she exited the store. Carrell Dep. at 94:4–21.

RESPONSE: Undisputed.

20. The crosswalk was an alternative path Plaintiff could have used to go to her car when she exited the store. Carrell Dep. at 94:4–21.

RESPONSE: Undisputed.

21. The wheel stop Plaintiff tripped over was a static, fixed object. Carrell Dep. at 90:21–23; 91:7–10.

RESPONSE: Undisputed.

22. The parking lot in which Plaintiff fell was sufficiently lit. Carrell Dep. at 75:21–77:2; 79:10–16.

RESPONSE: Undisputed.

23. The wheel stop was marked with red and white reflective tape, which was a different color than the parking lot and its surroundings. Carrell Dep. at 30:23–31:3; 99:8–11.

REPSONSE: Undisputed for the purposes of summary judgment.

24. Nothing obstructed or detracted from Plaintiff's view of the wheel stop. Carrell Dep. at 91:7–19.

RESPONSE: Disputed. Carrell dep., 76:11-14; 86:12-87:1; 89:11-14; 143:12-17; 153:10-17; Ex. 19 to Carrell dep.; Harness dep., 93:19-95:5. Ms. Carrell and Buc-ee's employee

Mr. Harness both testified that there were numerous things that could detract from a person's attention to the wheel stop, such as traffic and young children.

25. Plaintiff was not looking where she was walking when she tripped and fell over the wheel stop. Carrell Dep. at 89:11–90:8; 143:5–22.

> RESPONSE: Disputed. Carrell dep., 76:11-14; 86:12-87:1; 89:11-14; 143:12-17; 153:10-17; Ex. 19 to Carrell dep. Ms. Carrell testified and is seen on video looking in the direction of where she was walking toward her car and watching for oncoming traffic.

26. Plaintiff was looking directly at her car and traffic when she tripped and fell over the wheel stop.  Carrell Dep. at 75:21–77:2; 143:5–22.

> RESPONSE: Undisputed.

27. Plaintiff bears some fault for her injury because she wasn't looking where she was going. Carrell Dep. at 75:21–77:2; 89:11–90:8; 143:5–25.

> RESPONSE: Disputed. Carrell dep., 143:5-25. Ms. Carrell testified, "Of course I would probably bear some [fault] because I didn't see [the wheel stop]."

28. Buc-ee's must comply with federal, state, and local regulations in connection with construction of its stores, including without limitation regulations involving handicap parking, wheel stops, and walkways for entering and exiting Buc-ee's stores. Declaration of Donald D. Elswick ("Elswick Decl.") at ¶ 8.

> RESPONSE: Undisputed.

29. The City of Crossville, Tennessee has adopted and the 2010 ADA Standards for Accessible Design codified at 28 C.F.R. Part 36, including provisions governing accessible parking spaces

6

and access aisles (Sections 208 and 502) and accessible routes connecting parking areas to building entrances (Section 206). Elswick Decl. at ¶ 9.

RESPONSE: Undisputed.

30. Section 206 of the ADA Standards requires accessible routes connecting parking areas to building entrances, Section 403.5.1 requires a minimum 36 inches clear width for accessible routes (with limited exceptions), and Section 502.3 requires a minimum of 60 inches for access aisle widths for parking spaces. Elswick Decl. at ¶ 10.

RESPONSE: Undisputed.

31. Section 307 provides limitations for objects that protrude into circulation paths, but wheel stops located outside the accessible route and below cane-detection limits do not violate Section 307 when they do not intrude into the required clear width. Elswick Decl. at ¶ 10.

RESPONSE: Undisputed.

32. The City of Crossville, Tennessee has also adopted the 2018 International Building Code as adopted by the State of Tennessee, including IBC Chapter 11 (Accessibility) and IBC Section 1106 (Accessible Parking), which governs the design and configuration of accessible parking facilities and associated pedestrian access. Elswick Decl. at ¶ 11.

RESPONSE: Undisputed, except to the extent that the 2018 International Building Code has been "adopted by the State of Tennessee."

33. The IBC references the ADA Standards, and requires accessible routes from parking areas to building entrances with a minimum of 36 inches clear width for accessible routes (Section 1104)

7

and a minimum of 60 inches for access aisle widths for parking spaces (Section 1106). Elswick Decl. at ¶ 12.

RESPONSE: Undisputed.

34. The City of Crossville's building and zoning codes adopt and enforce the International Building Code and related accessibility provisions applicable to parking layout, accessible parking spaces, and pedestrian access at retail facilities. Elswick Decl. at ¶ 13.

RESPONSE: Undisputed.

35. Neither the 2010 ADA Standards for Accessible Design nor the International Building Code prohibits the use of wheel stops in parking facilities. Elswick Decl. at ¶ 14.

RESPONSE: Undisputed.

36. The 2010 ADA Standards for Accessible Design and the International Building Code regulate placement, visibility, and clearance, particularly by maintaining required accessible route widths and preventing obstructions within access aisles or designated pedestrian paths. Elswick Decl. at ¶ 14.

RESPONSE: Undisputed.

37. Buc-ee's is in substantial compliance with all of the applicable federal, state, and local regulations in connection with its wheel stops and handicap parking areas. Elswick Decl. at ¶ 15.

RESPONSE: Undisputed.

8

38. The federal, state, and local regulations at issue were in effect at the time Plaintiff fell on December 2, 2023. Elswick Decl. at ¶ 15.

RESPONSE: Undisputed.

39. The federal, state, and local regulations at issue are intended to protect the general public, including Plaintiff. Elswick Decl. at ¶ 15.

RESPONSE: Disputed. These regulations are intended to protect people with disabilities. *See* 28 C.F.R. § 36.101; 2018 International Building Code, Chapter 11 (Nov. 2021) available at https://codes.iccsafe.org/content/IBC2018P6/chapter-11-accessibility (last accessed March 10, 2026).

Respectfully submitted,

*s/Neal Agee, Jr.*
Neal Agee, Jr. BPR #9328
AGEE & TINSLEY
*Attorney for Plaintiff*
406 West Main St. Suite A
Lebanon, TN 37087
(615) 444-0001
(615) 444-3992 (fax)
neal@ageefirm.com

Tyler Chance Yarbro, BPR #023553
DODSON PARKER BEHM & CAPPARELLA, PC
*Attorney for Plaintiff*
1310 6th Avenue North
Nashville, TN 37208
(615) 254-2291
(615) 726-2241 (fax)
tyarbro@dodsonparker.com
*Counsel for Plaintiff*

9

## CERTIFICATE OF SERVICE

I certify that on March 11, 2026, I electronically filed the foregoing with the Clerk of Court for the U.S. District Court Middle District of Tennessee, through the Court's Electronic Case Filing System, which will automatically serve all counsel of record listed below:

R. Brandon Bundren, BPR #30985
Marlee G. Sacks, BPR #42072
BRADLEY ARANT BOULT CUMMINGS, LLP
*Counsel for Defendants*

*s/Neal Agee, Jr.*
Neal Agee, Jr.

10