UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| LISA CARRELL, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:24-CV-00080 |
| | ) | Judge Waverly D. Crenshaw, Jr. |
| BUC-EE'S TENNESSEE, LLC AND | ) | Magistrate Judge Luke A. Evans |
| BUC-EE'S, LTD., | ) | JURY DEMAND |
| Defendants. | ) | |

**PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS
IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Lisa Carrell, by and through counsel and pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 56.01 of the Local Rules of Court, submits this Statement of Additional Material Facts in Support of Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment.

1. When Ms. Carrell walked into the Crossville Buc-ee's store at approximately 5:30 p.m. on December 2, 2023, there was a car parked in the accessible spaces to the left of the blue hatched path leading to the store entrance. (Carrell dep., 150:6-157:20; Ex. 19 to Carrell dep., screenshot at 05:35:42).

2. In the two times that day that Ms. Carrell approached the store entrance, she had not noticed any hazard or danger in her path – no pot holes, ice, or any other hazard. (Carrell dep., 90:2-8).

3. When Ms. Carrell exited the store, she and her granddaughter stepped into the blue hatched pathway or "crosswalk." (Carrell dep., 86:13-21).

4. Ms. Carrell was to the right of her granddaughter when she exited the store. (Carrell dep., 86:86:18-20).

5. The accessible space to Ms. Carrell's right when she exited the store was vacant. (Carrell dep. 91:14-15).

6. A surveillance video recording of Ms. Carrell's fall show that right after she exited the store, she used her right hand to push her glasses up the bridge of her nose. (Carrell dep., 153:10-17; Ex. 19 to Carrell dep., screenshot at 05:38:36).

7. After Ms. Carrell exited the store, she looked forward for oncoming traffic. (Carrell dep. 86:12-87:1; 89:11-14).

8. After Ms. Carrell exited the store, she looked in the direction of the SUV driven by her son and parked at the gas pumps. (Carrell dep., 76:11-14; 86:12-87:1; 89:11-14).

9. When she saw where the car was, Ms. Carrell shifted a little to her right away from the blue hatched path and into the vacant handicapped accessible parking spot to her right to walk in the direction of where the SUV was parked. (Carrell dep., 87:2-87; 89:1-6).

10. Walking through the vacant accessible space to her right was the shortest route to get to the vehicle. (Carrell dep., 94:7-8).

11. When she drifted into the vacant handicapped accessible space, Ms. Carrell's right foot caught the corner of a wheel stop located at the end of a vacant handicap parking space. (Carrell dep., 76:24-77:5; 89:1-6; 154:1-6).

12. Ms. Carrell testified that she had not been looking down at her feet because she had not perceived any danger in that area when she previously entered the store. (Carrell dep., 89:21-90:8; 143:7-17).

13. As Ms. Carrell was walking to her car, she was trying to protect her grandchild from oncoming traffic. (Carrell dep., 143:12-17).

14. When she fell, she severely injured her hand. (Carrell dep., 77:5-78:2).

2

15. There were no signs in the Buc-ee's parking lot marking the blue painted path as a crosswalk or otherwise directing customers to walk in this path (Carrell dep., 87:9-14; 144:17-20; Matthews dep., 45:7-10; Harness dep., 54:10-12; 17-24; Laios dep., 92:25-93:5; Fitzpatrick dep., 78:15-17).

16. Ms. Carrell thought the blue, hatch-patterned paint on the parking lot pavement was there to keep a car from parking in that area because doing so would block the store entrance. (Carrell dep., 86:13-18; 87:6-14).

17. The Buc-ee's Travel Centers located outside the State of Texas are a uniform design. (Sebastian dep., 38:24-39:1).

18. The Buc-ee's Travel Centers located outside the State of Texas all have essentially the same arrangement of handicapped parking spaces located at the entrances and exits to the stores. (Sebastian dep., 39:2-12).

19. The Buc-ee's Travel Centers located outside the State of Texas all have wheel stops in the same location in the handicapped parking spaces and they all have ramps that lead to the door entrance. (Sebastian dep., 39:2-12).

20. Defendants specifically knew of numerous trip and fall incidents over wheel stops, at Buc-ee's Travel Centers outside the State of Texas generally and at the Crossville Buc-ee's Travel Center specifically.

21. From May 19, 2022 to December 2, 2023, the date of Ms. Carrell's fall, there were 196 reported falls caused by wheel stops at Buc-ee's stores outside the State of Texas with the same design as the Crossville store. (Justilian dep., 93:6-11; Stammer Declaration, ¶ 16).

22. From May 19, 2022 to December 2, 2023, there were 60 reported falls caused by wheel stops just at the Crossville Buc-ee's store. Justilian dep., 82:14-18; Stammer Declaration, ¶ 16).

3

23. Buc-ee's employees acknowledge that when customers fall onto concrete or asphalt there is a risk of serious injury or death. (Justilian dep., 19:10-13; Fitzpatrick dep., 32:10-13; Harness dep., 37:11-17; Laios dep., 19:6-9; McGeorge dep., 35:8-18).

24. From the reported incidents, Buc-ee's employees became aware of the fact that customers simply "were not seeing" the wheel stops and were routinely tripping over them. (McGeorge dep., 42:3-11, Laios dep., 76:19-77:4).

25. Indeed, store managers, in coordination with the Buc-ee's legal department, added reflective red and white tape to the wheel stops in an effort to make them more visible. (McGeorge dep. 39:2-40:25; Harness dep., 38:22-40:22; Fitzpatrick dep., 37:13-38:5; 43:17-24; 45:4-14).

26. When the Crossville store opened, the wheel stops were blue and the reflective tape was added at a later date. (McGeorge dep., 39:19-40:4).

27. The tape was added to the wheel stops at the Crossville Buc-ee's stores due to customers tripping and falling. (Fitzpatrick dep., 37:4-5).

28. Even after the reflective tape was added to the wheel stops, customers continued to routinely trip over the wheel stops. (McGeorge dep. 43:18-22; Laios dep., 76:6-9; Justilian dep., 100:4-9; Fitzpatrick dep., 71:22-24).

29. Buc-ee's employees knew that customers were free to walk anywhere in the parking lot and did not always use the crosswalk. (Harness dep., 54:13-24; Laios dep., 93:6-15; Justilian dep., 82:14-18; Stammer Declaration, ¶ 16).

30. Buc-ee's customers do not always use the crosswalk in the parking lot. (Carrell dep., 144:5-14).

4

31. Buc-ee's employees knew that customers walked through vacant handicapped accessible parking spaces when entering and exiting the store. (Matthews dep., 44:20-22; 45:3-10; Harness dep., 54:13-19; 95:7-9; Laios dep., 93:6-15).

32. If a more direct route to walk in or out of the store involves walking through a vacant handicapped accessible parking spot, people will do that instead of using the crosswalk. (Carrell dep. 144:13-14; Matthews dep., 44:34-45:2; Fitzpatrick dep., 77:13-78:6).

33. There are a number of known distractions in the parking lot, including items for sale, crowds of people, constant car traffic, and having to look after children. (Harness dep., 93:19-95:5; McConnell dep., 11:16-12:14).

34. Transportation engineer Robert E. Stammer, Jr., Ph.D., P.E., notes that the design of the Crossville Buc-ee's store was required to comply with the 2012 International Building Code, and the 2010 ADA Standards for Accessible Design ("ADA Standards"). (Stammer Declaration, ¶ 3).

35. The ADA Standards do not require a wheel stop in the accessible parking spaces at the Buc-ee store in Crossville, Tennessee. (Stammer Declaration, ¶ 4).

36. ADA Standard 502.7 require that parking spaces and access aisles be designed so that cars and vans, when parked, do not obstruct the required clear width of adjacent accessible routes. (Stammer Declaration, ¶ 5)

37. The ADA Standards do not mandate or require a specific design to comply with ADA Standard 502.7. (Stammer Declaration, ¶ 6).

38. At the Crossville store, the bollard in the accessible parking space prevented vehicle overhangs from reducing the required clear width of the accessible route as required by the ADA Standard 502.7. (Stammer Declaration, ¶ 7).

39. The bollard alone would satisfy the requirements of ADA Standard 502.7. (Stammer Declaration, ¶¶ 7, 11).

40. Industry standards developed by ASTM International indicate that parking lots should be designed to avoid the use of wheel stops. (Stammer Declaration, ¶ 8).

41. The ASTM standards further recommend bollards as an alternative to wheel stops. (Stammer Declaration, ¶ 10).

42. Buc-ee's could have removed the wheel stops in the accessible parking spaces at the Crossville store and still be compliant with the ADA Standards because the bollards alone were sufficient. (Stammer Declaration, ¶¶ 7, 11).

43. When it became apparent that there a significant number of falls were occurring as a result of the wheel stops at Buc-ee's stores, removing the wheel steps and relying on bollards was a feasible, safer alternative that Buc-ee's could have employed to eliminate customer injuries over wheel stops. (Stammer Declaration, ¶¶ 14, 15, 16, 17, 18).

44. Photographs from Google Maps of the exteriors of three recently opened Buc-ee's locations, store #61, Harrison County, Mississippi (opened June 9, 2025), store #63, Brunswick, Georgia (opened July 1, 2025) and store #69 Rockingham, Virginia (opened June 30, 2025), show the same arrangement of accessible parking spaces located at the entrance/exits of the store as at the Crossville store, except that the accessible parking spaces do not have wheel stops. (Stammer Declaration, ¶ 20).

45. Blue bollards with accessible parking signs in the center of the parking stalls at store #61, store #63, and store #69 prevent vehicle encroachment into the required clear width of adjacent accessible routes. (Stammer Declaration, ¶ 6).

6

Respectfully submitted,

*s/Neal Agee, Jr.*
Neal Agee, Jr. BPR #9328
AGEE & TINSLEY
*Attorney for Plaintiff*
406 West Main St. Suite A
Lebanon, TN 37087
(615) 444-0001
(615) 444-3992 (fax)
neal@ageefirm.com

Tyler Chance Yarbro, BPR #023553
DODSON PARKER BEHM & CAPPARELLA, PC
*Attorney for Plaintiff*
1310 6th Avenue North
Nashville, TN 37208
(615) 254-2291
(615) 726-2241 (fax)
tyarbro@dodsonparker.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on March 11, 2026, I electronically filed the foregoing with the Clerk of Court for the U.S. District Court Middle District of Tennessee, through the Court's Electronic Case Filing System, which will automatically serve all counsel of record listed below:

R. Brandon Bundren, BPR #30985
Marlee G. Sacks, BPR #42072
BRADLEY ARANT BOULT CUMMINGS, LLP
*Counsel for Defendants*

*s/Neal Agee, Jr.*
Neal Agee, Jr.

7