UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| LISA CARRELL, | ) Case No. |
| | ) 2:24-CV-00080 |
| Plaintiff, | ) |
| | ) Judge Waverly D. |
| v. | ) Crenshaw, Jr. |
| | ) |
| BUC-EE'S TENNESSEE, LLC | ) Magistrate Judge |
| and BUC-EE'S, LTD., | ) Alistair E. |
| | ) Newbern |
| Defendants. | ) |
| | ) JURY DEMAND |

---

VIDEO DEPOSITION OF

TIMOTHY LAIOS

Wednesday, December 3rd, 2025

---

APPEARANCES:

For the Plaintiff:   Mr. Neal Agee, Jr.
                     Agee & Tinsley
                     406 West Main Street, Suite A
                     Lebanon, TN 37087

                     Ms. Tyler Chance Yarbro
                     Dodson Parker Behm & Capparella
                     1310 6th Avenue North
                     Nashville, TN 37208


For the Defendants: Mr. R. Brandon Bundren
                     Bradley Arant Boult Cummings LLP
                     1221 Broadway, Suite 2400
                     Nashville, TN 37203


Also Present:        Mr. Travis Temples, Videographer

Stenographically Reported by:
Colleen Hansen, LCR, RPR

The video deposition of TIMOTHY LAIOS was taken by counsel for the Plaintiff at Bradley Arant Boult Cummings LLP, 1221 Broadway, Suite 2400, Nashville, TN 37203, Wednesday, December 3rd, 2025, beginning at approximately 9:54 a.m., for all purposes allowed under the Federal Rules of Civil Procedure.

It is agreed that Colleen Hansen, Licensed Court Reporter, Registered Professional Reporter, may swear the witness, take the deposition, and afterwards reduce same to typewritten form, and that the reading and signing of the completed deposition by the witness was not discussed.

All formalities as to caption, certificate, transmission, filing, et cetera, are waived.  All objections except as to the form of the questions are reserved to on or before the hearing.

_____

INDEX

TIMOTHY LAIOS:                                          Pages

Examination by Mr. Agee ................... 4-97

Examination by Mr. Bundren .............. 98-102

Examination by Mr. Agee ................ 102-107

EXHIBITS

| Number | Description | Page |
|--------|-------------|------|
| 1 | Timothy Laios Incident Reports 6/27/22 - 12/2/23 | 64 |
| 2 | Timothy Laios Incident Reports 12/2/23 - 10/20/25 | 71 |
| 3 | Photos - Wes Harness Exhibits 1-3 and Brian Matthews Exhibit 2 | 91 |
| 4 | Photo - Wes Harness Exhibit 5 | 97 |

**Bertram Reporting Services 615.758.6496**

A.      No.

Q.      Would you agree that Buc-ee's has a duty to act with reasonable care to make their premises safe for customers?

A.      Yes.

Q.      And do you agree that when customers fall onto concrete or asphalt, there's a risk of serious injury or death?

A.      Yes.

Q.      Do you agree that Buc-ee's has a duty to use reasonable care to prevent people from falling?

MR. BUNDREN:  Objection to form.

THE WITNESS:  Yes.

BY MR. AGEE:

Q.      Have you ever met the people that own the Buc-ee's store?

A.      Yes.

Q.      What are their names?

A.      Alvin Aplin and Don Wasek.

Q.      Where did you meet them?

A.      I met Alvin Aplin at the store grand opening in Crossville.  And I met Don Wasek at the store in Crossville when he went -- came by to visit the store.

Q.      Have you seen those gentlemen on more than

tripping and falling over these wheel stops, weren't they?

MR. BUNDREN: Objection to form.

THE WITNESS: Yes.

BY MR. AGEE:

Q. After this tape was added, people continued to trip and fall over the wheel stops, didn't they?

MR. BUNDREN: Objection to form.

THE WITNESS: Yes.

BY MR. AGEE:

Q. The addition of the wheel stops -- the addition of the red and white tape to the wheel stops did not make the wheel stops become more noticeable to customers, did it?

MR. BUNDREN: Objection to form.

THE WITNESS: I don't know the answer to that one.

BY MR. AGEE:

Q. You had multiple customers tell you they didn't see the wheel stops, didn't you?

MR. BUNDREN: Objection to form.

THE WITNESS: Yes.

BY MR. AGEE:

Q. And those customers -- customers told you they didn't see the wheel stop both before the

tape was added and after the tape was added, didn't they?

MR. BUNDREN: Objection to form.

THE WITNESS: Yes.

BY MR. AGEE:

Q. And, in fact, more recently and, in fact, by the time that we took depositions on July the 30th, another modification had been added to the wheel stop, hadn't it?

MR. BUNDREN: Objection to form.

THE WITNESS: Yes.

BY MR. AGEE:

Q. And you're familiar with that modification, aren't you?

A. Yes.

Q. And I've just passed you a picture of that modification I had, haven't -- haven't I?

MR. BUNDREN: Objection to form. Foundation.

THE WITNESS: Yes.

BY MR. AGEE:

Q. Is that -- is that picture, which was Exhibit 2 to the Matthews deposition, is that the latest thing to be added to these blue wheel stops?

A. Yes.

Q.    People have continued to fall even after that addition, haven't they?

MR. BUNDREN:  Objection to form.

THE WITNESS:  Yes.

BY MR. AGEE:

Q.    Was there ever any discussion about removing wheel stops?

MR. BUNDREN:  Objection to form.

THE WITNESS:  Not to me.

BY MR. AGEE:

Q.    And when you say "not to me" -- let me break this question down a little bit.

Did you ever suggest to anyone that the wheel stops should be removed?

A.    No.

Q.    Did you ever -- did anyone ever speak to you and tell you that the wheel stops should be removed?

A.    No.

Q.    Did you ever talk to your general manager about the number of people that were tripping and falling over the wheel stops?

A.    No.

Q.    Did it -- in terms of places that people get hurt in this store, tell me all the ways that people

you've written reports on other than wheel stops?

A.    Can I think of any?

Q.    Yes, sir.  Can you recall any customer personal injury form reports that you've made for trip and falls other than wheel stops?

A.    Yes.

Q.    And where else have there been trip and falls?

A.    Curbs at the entrances.

Q.    How many reports do you recall having made?

A.    I don't know.  I don't have a number.

Q.    As a percentage of the reports of injury that you've made from any one single object, wheel stops have constituted the majority of the reports you've made caused by one single object, haven't they?

        MR. BUNDREN:  Object to form.

        THE WITNESS:  Yeah, I don't know for sure.

BY MR. AGEE:

Q.    Can you think of anything, that is, any other one single object you can tell me about, that causes so many injuries?

        MR. BUNDREN:  Objection to form.

        THE WITNESS:  No.

///

Case 2:24-cv-00080    Document 72-4    Filed 03/11/26    Page 8 of 11 PageID #: 789

those crosshatch marks?

MR. BUNDREN:  Objection to form.

THE WITNESS:  Those are walking areas.

BY MR. AGEE:

Q.     Are they walking areas, or are they areas designated not to be parked in?

MR. BUNDREN:  Objection to form.

MR. AGEE:  What would be the basis of the form?

THE WITNESS:  Are not to be parked in.

MR. BUNDREN:  Speculation.  He said he didn't know.  He's the one who said it was for walking.  You're the one that suggested it's for something else.  If you ask him what -- if he knows what they are, then that's fine.  And you did, but I don't think anything else is.

BY MR. AGEE:

Q.     Why do you say that the cross-hatched areas are for walking?

A.     The handicap parking is next to them, and it allows room for people to...

Q.     Does it also indicate that that is not a parking spot for automobiles?

A.     Yes.

Q.     There's no signs up saying "Walk here" or

Case 2:24-cv-00080    Document 72-4    Filed 03/11/26    Page 9 of 11 PageID #: 7904

"Don't walk here," are there?

A.      No.

Q.      There are no signs prohibiting walking through the handicap parking spots, are they?

A.      No.

Q.      From your experience, you know that customers oftentimes walk through empty handicap parking spots, don't they?

        MR. BUNDREN:  Objection to form.

        THE WITNESS:  Yes.

BY MR. AGEE:

Q.      You've watched videos of them falling when they were cutting through empty handicap parking spaces, haven't you?

A.      Yes.

Q.      Why didn't -- why didn't you watch the video of -- of Ms. Carrell again, falling?

        MR. BUNDREN:  Objection to form.

        THE WITNESS:  I don't know.

BY MR. AGEE:

Q.      Wouldn't it have helped refresh your memory so you can testify today with some knowledge of what you actually did that evening?

        MR. BUNDREN:  Objection to form.  If you want to show him the video, go for it.

Case 2:24-cv-00080    Document 72-4    Filed 03/11/26    Page 10 of 11 PageID #15791

REPORTER'S CERTIFICATE

I, Colleen Hansen, Licensed Court Reporter, for the State of Tennessee at large, do hereby certify that I reported the foregoing proceedings at the time and place set forth in the caption thereof; that proceedings were stenographically reported by me; and that the foregoing proceedings constitute a true and correct transcript of said proceedings to the best of my ability.

I FURTHER CERTIFY that I am not related to any of the parties named herein, nor their counsel, and have no interest, financial or otherwise, in the outcome of these proceedings.

I FURTHER CERTIFY that I am duly licensed by the Tennessee Board of Court Reporting, as evidenced by the LCR number and expiration date following my name below.

IN WITNESS WHEREOF, I have hereunto set my hand this 28th day of December, 2025.

_____

Colleen Hansen, LCR #879

Expiration Date: 6/30/2026