UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| LISA CARRELL, | ) Case No. |
| | ) 2:24-CV-00080 |
| Plaintiff, | ) |
| | ) Judge Waverly D. |
| v. | ) Crenshaw, Jr. |
| | ) |
| BUC-EE'S TENNESSEE, LLC | ) Magistrate Judge |
| and BUC-EE'S, LTD., | ) Alistair E. |
| | ) Newbern |
| Defendants. | ) |
| | ) JURY DEMAND |

---

VIDEO DEPOSITION OF

ASHLEY McGEORGE

Wednesday, July 30th, 2025

---

APPEARANCES:

For the Plaintiff:    Mr. Neal Agee, Jr.
                      Agee & Tinsley
                      406 West Main Street, Suite A
                      Lebanon, TN 37087


For the Defendants:   Mr. Ryan N. Kilpatrick
                      Bradley Arant Boult Cummings LLP
                      1221 Broadway, Suite 2400
                      Nashville, TN 37203

                      Ms. Kortney Branum
                      11200 Broadway Street, Suite 2332
                      Pearland, TX 77584


Also Present:         Mr. Travis Temples, Videographer


Stenographically Reported by:
Colleen Hansen, LCR, RPR

EXHIBIT 8

The video deposition of ASHLEY McGEORGE was taken by counsel for the Plaintiff at Holiday Inn Express, 560 Peavine Road, Crossville, TN 38571, Wednesday, July 30th, 2025, beginning at approximately 3:15 p.m., for all purposes allowed under the Federal Rules of Civil Procedure.

It is agreed that Colleen Hansen, Licensed Court Reporter, Registered Professional Reporter, may swear the witness, take the deposition, and afterwards reduce same to typewritten form, and that the reading and signing of the completed deposition by the witness was not discussed.

All formalities as to caption, certificate, transmission, filing, et cetera, are waived. All objections except as to the form of the questions are reserved to on or before the hearing.

_____

INDEX

ASHLEY McGEORGE:                                    Pages

Examination by Mr. Agee ................. 3-58

EXHIBITS

| Number | Description | Page |
|--------|-------------|------|
| 1 | Ashley Pollak Incident Reports | 39 |

they're all over the same kind of object.

Would you agree with that?

A.      Yes.

Q.      And it sounds like that as a percentage of -- not as a majority, but as a -- as a percentage of your -- of your reports, that they constitute the -- the largest single object, one object, that you report; is that correct?

MR. KILPATRICK:  Object to the form.

THE WITNESS:  Yeah.  Yes.

BY MR. AGEE:

Q.      Okay.  And I'm going to pass you some -- the incident reports that you were involved in.  There's a cover sheet.  And if you'll flip past the cover sheet, these are hopefully in order, and these are falls beginning sometime after the store opened and ending December 2nd, 2023.  This is not up to date. The first one that I have is a 7/21/22 report.

Do you see that?

A.      I'm sorry.  Ask me that one more time.  I apologize.

Q.      At the top of the page is the first report, 7/21/22.

A.      Yes, sir.

Q.      And you're -- you're listed on the back page

Case 2:24-cv-00080    Document 72-8    Filed 03/11/26    Page 3 of 10 PageID #: 825
EXHIBIT 8

you see that one?

A. Yes, sir.

Q. And there's a customer statement. Would you read that?

A. "I didn't see that blue curb. You should really paint it yellow so it doesn't blend. I fell over it and hit my head."

Q. Would you agree that falling and hitting their head could create some serious injuries?

MR. KILPATRICK: Object to the form.

THE WITNESS: Do I feel that anyone falling over and hitting their head could be serious? Absolutely. Whether it involves a tire stop or not, yes.

BY MR. AGEE:

Q. Okay. Falling and hitting concrete can be dangerous; can't it?

A. Yes.

Q. Next report is February 19th, 2023.

A. Uh-huh.

Q. You were listed both as a witness -- and you're not the manager on duty. Krista Sebo, I think, is the manager on duty.

Do you see that?

A. I do.

A.    Yes.

Q.    What did the customer state?

A.    Customer stated, "I just tripped over the blue curb and hit my head on the concrete."

Q.    And then I think what would be the last incident report in this time frame is April 13, 2023.

A.    Yes.

Q.    And what part of their body was injured?

A.    Based off of the statement, both hands, but her right hand took the worst of it.

Q.    And what body parts did you check as being affected?

A.    Hand, fingers, right knee, all of those.

        MR. AGEE:  We'll make these customer personal injury reports as Exhibit Number 1 to your deposition.

        (Marked Exhibit 1 for ID.)

BY MR. AGEE:

Q.    Do you recall the appearance of these tire stops when the store opened?

A.    Yes.

Q.    Tell me what they -- they looked like.

A.    They were solid blue.

Q.    Are you aware of any alterations or changes to the wheel stops since then?

A.    Yes.

Q.    And what alterations or changes to the wheel stops have been made?

A.    There was reflective tape added.

Q.    And when was the reflective tape added?

A.    I don't know.

Q.    How did you become aware of -- the reflective tape was added?

A.    Because we discussed it as a team.  We thought about putting reflective tape on the tire stops.  As how many customers come into our building, we were just trying to make it more safe.  So we tried reflective tape to just make it be seen more.

Q.    And who was on that team that had that conversation?

A.    So it was just our -- it was just us, our assistant general manager team.  With how many customers, we thought that that would be a good notion.  Do I recall that conversation?  No.  I just know that that was something that was discussed.

Q.    Well, tell me the people that it was discussed with.

A.    I don't know.  I don't remember.  I would think it would be the general manager at the time and then our maintenance manager at the time.

Case 2:24-cv-00080    Document 72-8    Filed 03/11/26    Page 6 of 10 PageID #: 828

EXHIBIT 8

come into that store a day?

A.    No.

Q.    Did you know that people were not seeing the wheel stops and were tripping and falling over them?

A.    Based --

       MR. KILPATRICK:  Object the to the form.

       Go ahead.

       THE WITNESS:  Based off of the statements on our incident reports, I feel like that's pretty clear that a lot of them tell us they do not see it. So yes, I would say that that's fair.

BY MR. AGEE:

Q.    Do you know whether any of the other stores in the Buc-ee's chain added this red and white tape to their wheel stops?

A.    I do not know that for sure, no.

Q.    Do you think that the -- that the -- it was your conversations among your group of AGMs that caused this store to have tape put on the wheel stops?

A.    Repeat the question.

Q.    Are you -- I'll -- I'll restate the question.

Did your group's discussion cause the tape to be put on the wheel stops at this store?

A.    I don't know if that was the ultimate reason,

Case 2:24-cv-00080   Document 72-8   Filed 03/11/26   Page 7 of 10 PageID #: 829

EXHIBIT 8

no.  I don't know that a hundred percent.

Q.      Was that your recommendation before the tape actually got installed?

A.      Was what a recommendation?

Q.      That the tape be added.

A.      No, I don't think we ever got verbal recommendation, unless my general manager can speak to a conversation that I was not privy to.  So no, I do not know if that was recommended to our location.

Q.      By somebody else?

A.      Correct.

Q.      But you know -- but you have a recollection that people working in the store recommended that change?

A.      I wouldn't say anyone recommended anything. We just discussed how we can make our store safer and that was something that came up in conversation.

Q.      Okay.  Did putting the tape on the wheel stops stop the falls?

A.      No.

Q.      People kept falling?

A.      Yes.

Q.      Do you know whether a wheel stop is required at this location?

A.      I do not know that.

EXHIBIT 8

Q.      Was there -- do you recall any discussions about whether or not the wheel stop could be removed?

A.      No.

Q.      Do you -- were there any discussions about perhaps painting the wheel stop a different color, say, yellow?

A.      No.

Q.      The only suggestion was add reflective tape?

A.      It was just something we discussed, yes.

Q.      Okay.

A.      And I don't know the state laws or what corporate has already discussed.  That's above my pay grade.

Q.      But you recognized the need that the wheel stops needed to be more visible?

A.      I recognized --

                MR. KILPATRICK:  Object to the form.

                Go ahead.

                THE WITNESS:  Sorry, Ryan.

                MR. KILPATRICK:  No, you're good.

                THE WITNESS:  I recognized the fact that there was something that needed to be safer in place.

BY MR. AGEE:

Q.      People repeatedly said to you that they didn't see the wheel stops; didn't they?

Case 2:24-cv-00080    Document 72-8    Filed 03/11/26    Page 9 of 10 PageID #: 833

EXHIBIT 8

REPORTER'S CERTIFICATE

I, Colleen Hansen, Licensed Court Reporter, for the State of Tennessee at large, do hereby certify that I reported the foregoing proceedings at the time and place set forth in the caption thereof; that proceedings were stenographically reported by me; and that the foregoing proceedings constitute a true and correct transcript of said proceedings to the best of my ability.

I FURTHER CERTIFY that I am not related to any of the parties named herein, nor their counsel, and have no interest, financial or otherwise, in the outcome of these proceedings.

I FURTHER CERTIFY that I am duly licensed by the Tennessee Board of Court Reporting, as evidenced by the LCR number and expiration date following my name below.

IN WITNESS WHEREOF, I have hereunto set my hand this 10th day of August, 2025.

_____

Colleen Hansen, LCR #879

Expiration Date: 6/30/2026