LISA CARRELL,               )
     Plaintiff,          )
                         )
v.                        )     No. 2:24-CV-00080
                         )     Judge Waverly D. Crenshaw, Jr.
BUC-EE'S TENNESSEE, LLC AND   )     Magistrate Judge Luke A. Evans
BUC-EE'S, LTD.,             )     JURY DEMAND
     Defendants.        )

## PLAINTIFF'S MOTION TO EXCLUDE TESTIMONY OF EXPERT DONALD D. ELSWICK WITH INCORPORATED MEMORANDUM OF LAW

Plaintiff Lisa Carrell, by and through counsel and pursuant to Rules 702 and 703 of the Federal Rules of Evidence, respectfully moves the Court to exclude certain opinion testimony expected to be offered on behalf of the Defendants by Donald D. Elswick.

Pursuant to Rule 7.01(a)(1) of the Local Rules of Court, counsel for Plaintiff has conferred with Defendants' counsel regarding this motion. Defendants oppose this Motion.

In support of this Motion, Plaintiff states the following.

## Factual Background

This case involves a trip-and-fall that occurred at the Buc-ee's store in Crossville, Tennessee. Plaintiff Lisa Carrell has testified that after exiting the Buc-ee's store, she walked into a vacant handicapped accessible space just outside the door and Ms. Carrell's right foot caught the corner of a wheel stop located at the end of a vacant handicap parking space. (Carrell dep., 76:24-77:5; 89:1-6; 154:1-6). Ms. Carrell fell forward, tripping on the wheel stop. (Id., 77:1-19).

Defendants have disclosed Donald D. Elswick as a proposed expert witness to offer his opinions about this matter in his capacity as a safety professional and industrial hygienist. His report indicates that he was retained by defense counsel "to perform an independent safety, human

factors, and code compliance evaluation and assessment of the incident involving Lisa Carrell at the Buc-ee's Travel Center, located at 2045 Genesis Road, Crossville, Tennessee, which occurred on December 2, 2023." See Ex. 1, ELSMART Report.

Mr. Elswick is a safety professional and industrial hygienist with expertise in management of hazardous materials. Ex. 1. He has obtained a number of certifications that he cites in connection with his expert report in this case. Id. According to his CV, Mr. Elswick's certifications include the following:

- Certified by the American Board of Industrial Hygienists (ABIH) in the comprehensive practice of Industrial Hygiene (CIH Certificate # 11349 CP);
- Certified by the Board of Certified Safety Professionals as a Certified Safety Professional (CSP# 19460);
- Certified Hazardous Material Manager from The Institute of Hazardous Materials Management as a Certified Hazardous Material Manager (CHMM# 9854); and
- Certified Instructional Trainer designation from the Council of Engineering and Scientific Specialty Boards with a specialization in Management and Transportation of Hazardous Material and Waste (CIT# 99-878).

Id. According to Dale Fitzpatrick, Buc-ee's Ltd.'s Health and Safety Manager, a certification as a safety training specialist can be obtained in a single seminar lasting two or three days. Ex. 2, Fitzpatrick Dep. 29:25-31:7.

Mr. Elswick also notes on his CV that he is an OSHA-authorized trainer, a Hazardous Material Specialist and a certified HAZMAT Technician, a Certified Occupational Safety Specialist, and an American Industrial Hygiene Association Registered Specialist. Id. A review of Mr. Elswick's CV reveals that his presentations and publications have focused on worker safety, as they emphasize OSHA compliance, compliance with the Pregnant Workers Fairness Act, managing heat stress for employees and workers, and mitigating workplace injuries. Id.

Mr. Elswick listed five cases in Alabama state courts and three cases in federal courts where he has provided expert testimony and/or opinions. Id. The three federal cases he lists are as follows:

- *United Fire & Casualty Company a/s/o Rivergreen Water Recycling, LLC v. Dependable Tank Line, LLC, et al.*, Kentucky District Court case number 3:19-cv-00759;

- *United States of America v. Joon LLC d/b/a Ajin USA*, Middle District of Alabama case number 3:20-cr-00093; and

- *Steward v. Buc-ee's Ltd., et al.*, Middle District of Alabama case number 1:20-cv-00538.

Id.

In the *Dependable Tank Line* case, Mr. Elswick reviewed a fire that he concluded was caused by a failure to follow safety protocols involving potentially hazardous materials. See Ex. 3, ELSMART Report in case no. 3:19-cv-00759. Similarly, Mr. Elswick offered opinions relevant to the criminal prosecution of Joon LLC, a case that involved the death of an employee allegedly resulting from the employer's violation of regulations requiring employers to utilize energy control procedures to prevent machinery from starting during maintenance and servicing. See Ex. 4, Charging Document in case no. 3:20-cr-00093. In the Alabama Buc-ee's case, Mr. Elswick examined a slip-and-fall incident on a wet floor and opined as to the Buc-ee's store's management of slip-and-fall risks and safety policies with regard to slip-and-fall incidents. See Ex. 5, ELSMART report in case no. 1:20-cv-00538.

Mr. Elswick's expertise relates to workplace safety practices. Mr. Elswick does not identify any expertise as an engineer.

<u>**Legal Argument**</u>

**A. Mr. Elswick's Opinion #6 and Response to Stammer Report**

**1. Statement of Opinions**

In his report, Mr. Elswick offers what he calls "Safety Engineering Principles." Specifically, he opines in paragraph 6 of the "Opinions" section of his report as follows:

3

Engineering data reviewed includes Buc-ee's design drawings, standard detail sheets, and engineering communications provided by Scott Ratcliff, P.E., as well as structural load comparison information prepared by Erasmo Morales Jr., P.E. (Dally + Associates).

These materials establish that the Crossville signpost consists of an approximately 4-inch diameter concrete-filled pipe embedded approximately 2.2 feet, with an estimated horizontal load capacity of approximately 450 pounds, whereas true bollards used in protective applications consist of approximately 6-inch diameter concrete-filled steel members embedded approximately 7.5 feet, with load capacities on the order of 20,000 pounds.

This engineering comparison confirms that the subject signpost is not designed or capable of functioning as an impact-resistant bollard.

Certain factual assertions and opinions embedded in this Paragraph 6 of the Opinions section are beyond the scope of expertise for an industrial hygienist or safety professional: (1) the Crossville "signposts" have "an estimated horizontal load capacity of approximately 450 pounds; (2) the "signposts" are different from "true bollards"; (3) "true bollards" are only of a certain dimension and have load capacities on the order of 20,000 pounds; and, ultimately, (4) that the "subject signpost is not designed or capable of functioning as an impact-resistant bollard." Ex. 1. As an initial matter, it is worth noting that the "signpost" referenced by Mr. Elswick is actually referred to as a "bollard" in the technical drawings he reviewed. See Ex. 6, Bates stamped pages BUC-CARRELL003140. Thus, Mr. Elswick is not even using the same technical language employed by the Kimley Horn designers and engineers to describe what he calls a "signpost."

Moreover, it is clear from the documents produced by Defendants in connection with their Rule 26 expert disclosures report that Mr. Elswick is merely parroting language provided to him by Buc-ee's from Professional Engineer Erasmo Morales Jr., P.E. See Exhibit 7, Bates stamped numbers BUC-CARRELL003141-42. The e-mail chain shows Scott Ratcliff, P.E., "Director of Engineering" for Buc-ee's, Ltd. asking Mr. Morales for a load comparison between the signpost bollard used at the Crossville store and the signpost bollards used at newer stores. Id. This

4

information was apparently requested by the "legal team" in connection with this case and forwarded to Mr. Elswick to include in his Rule 26 expert report. Mr. Morales responds like this:

> Scott,
>
> A comparison for the 2 different details
>
> Old detail: 4" diameter, concrete filled pipe, embedded 2.2 ft in an 18" pier, and restrained at ground level (by pavement). The horizontal load is about 450 lbs.
>
> New detail: 6" diameter, concrete filled pipe, embedded 7.5 ft in a 30" pier, and restrained at ground level (by pavement). The horizontal load is about 20,000 lbs.
>
> Thank you,
>
> Erasmo Morales Jr, PE

Id.

From the data that Mr. Morales provided, Mr. Elswick derived the following opinion: "The engineering comparison confirms that the subject signpost is not designed or capable of functioning as an impact-resistant bollard." Ex. 1. He also stated, in his response to Dr. Stammer's report offered by the Plaintiff, that "true bollards used in ADA complaint [sic] applications have a load capacity on the order of 20,000." Id.

### 2. Mr. Elswick's Opinions in Paragraph 6 and in Response to Stammer Opinion are unreliable.

Under Rule 702 of the Federal Rules of Evidence, the trial judge acts as a gatekeeper to ensure that expert testimony is both reliable and relevant. *Mike's Train House, Inc. v. Lionel, L.L.C.,* 472 F.3d 398, 407 (6th Cir.2006), *abrogated on other grounds* (citing *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, (1999)). In determining whether certain testimony is reliable, the focus of the Court "must be solely on principles and methodology, not on the conclusions that they generate." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993).

In connection with Mr. Elswick's Rule 26 disclosures, Defendants produced documents labeled with Bates stamped numbers BUC-CARRELL003141-42 that show the basis of Mr. Elswick's opinion that "the subject signpost is not designed or capable of functioning as an impact-resistant bollard." As an initial matter, this information is not the kind of facts or data that a safety professional or industrial hygienist "would reasonably rely." See Fed. R. Evid. 703. Moreover, Mr. Elswick fails in his report to show how the facts and data provided by Mr. Morales lead to this conclusion. Mr. Elswick provides no calculations, analysis, or explanation of his methodology in forming his opinion regarding the ability of the "signpost" to serve as an "impact-resistant bollard." He repeats this opinion again in his "Response to Stammer Report," again without any analysis regarding impact resistance. As such, there is an analytical gap between Mr. Morales' factual statements and Mr. Elswick's ultimate conclusion.

Without the calculations, analysis, or explanation of the methodology showing how Mr. Elswick formed his opinion regarding the ability of the "signpost" to serve as an "impact-resistant bollard," this opinion does not satisfy the reliability threshold of Rule 702 and *Daubert*. This conclusion is bolstered by the fact that Mr. Elswick's qualifications as an industrial hygienist and safety professional do not qualify him to engage in the calculations that would lead to this conclusion. Indeed, this analytical gap connecting the specifications of the two bollards with the conclusion about their comparative impact resistance would normally be addressed by an engineering professional like Mr. Morales. In his deposition, Dale Fitzpatrick, Buc-ee's Ltd.'s Health and Safety Manager, also a certified safety professional, deferred questions of what constituted a "true" bollard and the impact resistance of the "signpost" to the team that designs the Buc-ee's stores, the "architects, engineers, traffic planners." Ex. 2, Fitzpatrick dep. 67:22-70:2.

6

Moreover, Mr. Elswick's opinion about the impact resistance comparison should be viewed with suspicion since it was so clearly developed for the purposes of this litigation, as reflected in the emails among Buc-ee's-affiliated engineers and Mr. Elswick (and counsel for the Defendants). It is appropriate for a trial court to be skeptical of an expert's testimony that has been developed for the purposes of litigation as opposed to relating to matters growing naturally and directly out of their own research. *See, e.g., Daubert v. Merrell Dow Pharms., Inc.,* 43 F.3d 1311, 1317 (9th Cir.1995) (noting that this is a "very significant fact to be considered"); *see also Mikes Train House, Inc.*, 472 F.3d at 408.

For all of these reasons, therefore, the opinions Mr. Elswick expresses in Paragraph 6 of the Opinions section of his report are not sufficiently reliable under the standards of Rule 702 and 703 and *Daubert*, and they should be excluded.

### 3. Mr. Elswick's generic references to the International Building Code and the ADA Standards for Accessible Design are not reliable.

In his report, Mr. Elswick refers very generally to certain standards prescribed by the International Building Code and the ADA Standards for Accessible Design. He fails to cite specific standards either by name or section number to support the opinions he offers in Paragraphs 1 and 2 of the Opinions section of his expert report, as well as in his Response to the Stammer Report. For instance, he notes, "true bollards used in ADA complaint [sic] applications have a load capacity on the order of 20,000." Ex. 1. This opinion, offered without any reference to a specific ADA standard, is vague and unsupported.

This lack of specificity, coupled with the fact that Mr. Elswick is not an engineer or traffic planner, indicates the unreliability of Mr. Elswick's testimony on these points. This vague, non-specific testimony about "standards" generally should be excluded under Rule 702 of the Federal Rules of Evidence.

**<u>Conclusion</u>**

For the foregoing reasons, therefore, Plaintiff respectfully requests that the Court exclude the following proposed opinion testimony from Donald D. Elswick:

- testimony expressed in Paragraph 6 of the Opinions section of Mr. Elswick's report regarding what constitutes a "true" bollard and the impact resistance of any parking lot feature;

- testimony expressed in Response to the Stammer Report section of Mr. Elswick's report regarding what constitutes a "true" bollard and the impact resistance of any parking lot feature; and

- testimony about International Building Code and the ADA Standards for Accessible Design that does not cite a specific standard from those authorities.

Respectfully submitted,

*s/Neal Agee, Jr.*
Neal Agee, Jr. BPR #9328
AGEE & TINSLEY
*Attorney for Plaintiff*
406 West Main St. Suite A
Lebanon, TN 37087
(615) 444-0001
(615) 444-3992 (fax)
neal@ageefirm.com

Tyler Chance Yarbro, BPR #023553
DODSON PARKER BEHM & CAPPARELLA, PC
*Attorney for Plaintiff*
1310 6th Avenue North
Nashville, TN 37208
(615) 254-2291
(615) 726-2241 (fax)
tyarbro@dodsonparker.com
*Counsel for Plaintiff*

8

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on May 29, 2026, I electronically filed the foregoing with the Clerk of Court for the U.S. District Court Middle District of Tennessee, through the Court's Electronic Case Filing System, which will automatically serve all counsel of record listed below:

R. Brandon Bundren, BPR #30985
Marlee G. Sacks, BPR #42072
Stephen M. Fernelius, Texas Bar # 06934340 (PHV)
BRADLEY ARANT BOULT CUMMINGS, LLP
*Counsel for Defendants*

s/ *Tyler Chance Yarbro*<br>Tyler Chance Yarbro

9