UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

LISA CARRELL,                     )
PLAINTIFF                         )
                                  ) No. 2:24-CV-00080
v.                                ) Judge Waverly D.
                                  ) Crenshaw, Jr.
                                  ) Magistrate Judge Alistair
                                  ) E. Newbern
BUC-EE'S TENNESSEE, LLC AND )  JURY DEMAND
BUC-EE'S, LTD.,                   )
DEFENDANTS                        )

--------------------------------------------------------

ORAL AND VIDEOTAPED DEPOSITION OF

DALE FITZPATRICK

DECEMBER 17, 2025

--------------------------------------------------------

ORAL AND VIDEOTAPED DEPOSITION OF DALE FITZPATRICK, produced as a witness at the instance of the Plaintiff and duly sworn, was taken in the above-styled and numbered cause on the 17th day of December, 2025, from 9:33 a.m. to 12:13 p.m., before Haleigh Hernandez, Certified Shorthand Reporter in and for the State of Texas, reported by computerized stenotype machine at the offices of Bradley Arant Boult Cummings LLP, JPMorgan Chase Tower, 600 Travis Street, Suite 5600, Houston, Texas 77002, pursuant to the Federal Rules of Civil Procedure and the provisions stated on the record or attached hereto.

NELL McCALLUM & ASSOCIATES, INC.    EXHIBIT 2

APPEARANCES

FOR PLAINTIFF:

      Mr. Neal Agee, Jr. (present via Zoom)
      Agee & Tinsley
      406 West Main Street, Suite A
      Lebanon, Tennessee 37087
      Telephone: (615) 444-0001
      E-mail: neal@ageefirm.com

FOR DEFENDANTS:

      Mr. R. Brandon Bundren
      Bradley Arant Boult Cummings LLP
      1221 Broadway, Suite 2400
      Nashville, Tennessee 37203
      Telephone: (615) 244-2582
      E-mail: bbundren@bradley.com
      -- and --
      Mr. H. Tracy Richardson, III
      In-house Counsel for Buc-ee's, LTD.

ALSO PRESENT:

      Michael Cammack, Videographer
      Brittany Manis (present via Zoom)

INDEX

PAGE

Appearances .....................................2

DALE FITZPATRICK

     Examination by Mr. Agee ....................4

Signature and Changes ..........................88

Court Reporter's Certificate ...................90

EXHIBITS

EXHIBIT        DESCRIPTION               PAGE

1           LinkedIn Page of Dale Fitzpatrick  34

2           Amended Notice of Video         36
              Deposition of Defendant

3           Defendant's Responses and     36
              Objections to Plaintiff's
              Rule 30(B)(6) Amended Notice of
              Deposition

4           Photos of Crossville, Tennessee,  65
              Buc-ee's

NELL McCALLUM & ASSOCIATES, INC.  EXHIBIT 2

unduly repetitious or asked and answered. But it's your deposition. I'm just preserving the record.

Q. (BY MR. AGEE) Were you involved in the decision to add the red and white tape to these wheel stops?

A. No, sir, I was not.

Q. We've printed off a copy of your -- your LinkedIn page. Did you put that information on LinkedIn?

A. What specific -- you're specifically asking about the printed information that's in front of me, correct?

Q. That's correct.

A. Page 2 of my copy is jumbled and reversed. So I can't quantify page 2. Not quite sure what happened there.

MR. BUNDREN: Neil, just for the record, the -- it looks like it was printed upside down, and it's -- it's very blurry. At least page 2.

A. Yeah, page 2. Page 1 and 3 I can attest to. Looks like --

Q. (BY MR. AGEE) Page 1 is the page I'm really interested in.

A. Okay.

Q. It shows you as being the health and safety

NELL MCCALLUM & ASSOCIATES, INC.    EXHIBIT 2

manager at Buc-ee's, LTD, correct?

A. Correct.

Q. And in the left-hand block, it says, "Top skills. Certified safety training specialist." I did read that correctly?

A. Yes.

Q. And who certified you as a specialist?

A. I believe that was a course that I took in my employment at Randalls. It was a certified training seminar that you go to. It was one of the things that Randalls had sent me to participate in.

Q. Do you remember who the sponsor of that certification program was?

A. Do not off the top of my head. It was one of the recognized safety organizations.

Q. And how long did this course take?

A. I think -- actually, I want to say it was certified safety professionals. I believe it was over several days.

Q. And the certified safety planning specialist, where did you earn that certification?

A. It was at the same seminar.

Q. So you obtained both certifications from one seminar over several days; is that correct?

A. That would be correct.

NELL MCCALLUM & ASSOCIATES, INC.   EXHIBIT 2

Q. And when we say "several days," that would -- several to me would mean three days. Does that sound about right?

A. It -- it was quite a long time ago when I took that, but it sounds like a two- or three-day seminar. That would be correct. I know I spent the night at a hotel.

Q. And under "Experience," you list Buc-ee's as health and safety manager; but you don't have anything under that topic as to what your responsibilities are, did -- do you?

A. I can tell you that I don't -- I didn't list anything specific. That was just because when I applied and -- and got my position -- or received the position with Buc-ee's, I just haven't gone in or seen a need to update my résumé or update my LinkedIn profile.

Q. Under -- under "Summary," I'll read that. And if you'll read -- watch with me, make sure I read it correctly, it states, "Dependable, results-driven, professional with expertise in planning, budgeting, and forecasting. Highly successful and recognized for extensive computer knowledge, management abilities, team building, and promoting corporate policy." Able "to effectively interact with all level of" -- "of employees from administrative personnel to key executives."

NELL MCCALLUM & ASSOCIATES, INC.    EXHIBIT 2

Q. And you see a car parked there in the first spot that you can see?

A. Yes.

Q. Okay. And you see the -- the sign holder, which you and I are disagreeing on whether that's a bollard? You see that in that picture, correct?

A. I do.

Q. Does that appear to be an aluminum post?

MR. BUNDREN: Objection to form.

A. My picture is fairly grainy, but it does appear to be an aluminum -- circular aluminum post.

Q. (BY MR. AGEE) If you'll flip forward to the third-from-the-last picture, you'll see another view showing the handicap parking spaces in this post a little bit closer. Do you see that?

A. Yes. It looks like it is not circular but it's a square aluminum. And that picture is much better.

Q. So looking at this -- these pictures, it's your -- your opinion that this store has a square aluminum post in front of it, correct?

A. Based on looking at this picture, yes.

Q. So the distinction as to whether or not this was a bollard would depend on the facts of the construction of this post that we're looking at that we

NELL MCCALLUM & ASSOCIATES, INC.    EXHIBIT 2

disagree about, wouldn't it?

MR. BUNDREN: Objection to form.

A. It would depend on our intent of what this is, which is a -- a sign protecter.

Q. (BY MR. AGEE) Do you know how deeply this thing is buried in the ground?

A. I do not have an exact measurement.

Q. You don't know the diameter of this pipe, do you?

A. I have not had a opportunity to -- to measure or examine it, no.

Q. Bollard -- do you know whether bollards were an alternative to wheel stops for this location of the handicap parking spot?

MR. BUNDREN: Objection to form.

A. I'm sorry. Can you rephrase the question?

Q. (BY MR. AGEE) Do you know if a bollard alone would be sufficient to meet code requirements in Crossville, Tennessee?

A. I do not know if a bollard alone would suffice. I do not.

Q. Would learning the answer to that question be part of a risk assessment?

A. It would.

Q. If a bollard alone would be sufficient, then

NELL MCCALLUM & ASSOCIATES, INC. EXHIBIT 2

the -- a bollard could be placed there in lieu of a wheel stop, couldn't it?

MS. BOLTON:  Objection to form.

A.  Again, I would have to understand what the bollard -- a bollard alone provided it does not have the sign attached.  We have to have that sign in the handicap parking spot.  I don't believe for it to be a true bollard, we would be able to attach the sign to it as well.

Q.  (BY MR. AGEE)  But you -- you're not qualified to have an opinion about that, are you?

MR. BUNDREN:  Objection to form.

A.  I know that I have to have a sign, a handicap sign in that parking spot.  So any risk assessment that we do would be predicated on the fact that we can install the handicap sign in that parking spot.

Q.  (BY MR. AGEE)  That -- that would be a question for an engineer, wouldn't it?

MR. BUNDREN:  Objection to form.

A.  Among other people, yes.

Q.  (BY MR. AGEE)  Well, what people besides an engineer would be able to answer that question?

MR. BUNDREN:  Objection to form.

A.  So the team that we have that designs our stores.  So architects, engineers, traffic planners.

NELL MCCALLUM & ASSOCIATES, INC.    EXHIBIT 2

Not one particular person do we utilize.  We have many people that advise us as we build our stores.

Q.  (BY MR. AGEE)  Do you know which part of that team is responsible for the handicap parking space design?

A.  I do not have specific knowledge of a person.

Q.  Do you have a specific knowledge of the type of training and qualification that that person has to have to design handicap parking spaces?

MR. BUNDREN:  Objection to form.

A.  I do not.  I'm not involved in the day-to-day process.

Q.  (BY MR. AGEE)  Is that -- what -- what -- what does the day-to-day process have to do with this?

A.  I'm -- I do not on a daily -- on a day-to-day basis have meetings, discussions with the designers and planners of our stores.

Q.  That's not a part of your responsibility, then?

A.  No.  We depend on the engineers, architects who we hire to plan and design our stores to provide that information to us.

Q.  Were you -- were you familiar with the lawsuit Full vs. Buc-ee's that was filed regarding an injury at the Calhoun, Georgia, store?

REPORTER'S CERTIFICATE

I, Haleigh Hernandez, a Certified Shorthand Reporter in and for the State of Texas, certify that this deposition transcript is a true and correct record of the testimony given by the witness named herein, after said witness was duly sworn by me. The witness was requested to review the deposition.

I further certify that I am neither attorney or counsel for, related to, nor employed by any parties to the action in which this testimony is taken and, further, that I am not a relative or employee of any counsel employed by the parties hereto or financially interested in the action.

I further certify that the amount of time used by each party at the deposition is as follows:

Mr. Agee - 2h15m
Mr. Bundren - 0h0m
Mr. Richardson - 0h0m

SUBSCRIBED AND SWORN TO under my hand and seal of office on this the 30th day of December, 2025.

/s/ Haleigh Hernandez

Haleigh Hernandez, CSR, RPR
Texas CSR No. 9371
Expiration: 03/31/2027
Nell McCallum & Associates
3560 Delaware, Suite 402
Beaumont, Texas 77706
Firm Registration No. 143
(409) 838-0333

**NELL McCALLUM & ASSOCIATES, INC.** EXHIBIT 2